Good morning, your honors. Christopher Kelleher on behalf of the appellant Bradley Cox. Your honors, we presented four issues in this appeal, and I'm happy to discuss any of them, but I will try and zero in on the constitutional concerns. Before delving into those issues, I'd like to briefly put this case in perspective. Quite simply, the facts aren't pretty, and while the court has certainly seen worse, the defendant's exploitation of the toxic mix of hormones and technology certainly deserves rebuke. However, it bears emphasizing that Cox did not try to physically lure these young women, physically harm them, or physically take advantage of them. The abuse, thus, stayed in the emotional realm and never entered the physical. This, of course, is not a justification of the actions, but it shows that he was driven more by demons of depravity than danger. It's a distinction that may only have minimal impact on the legal issues, but it's an important distinction, and I would ask the court to keep it in mind. As for the constitutional issues, there is some question over whether the arguments were preserved. Mr. Cox certainly did for his statements at his home and his office. He filed multiple motions to suppress dockets 47, 62, 133, and 153. Now, as for the search of his home and computer, that's a different story. Admittedly, there was no pretrial motion filed. However, Mr. Cox, who again was pro se, did object contemporaneously at the trial. With regard to his motion to suppress his statements in his office, I noted that the magistrate judge ruled on both of those issues. Did Mr. Cox appeal both of those issues to the district court? I do not believe so, Your Honor. And does that impact our analysis with regard to the arguments with regard to suppression of a statement while in his office? It would, Your Honor. Obviously, we are operating under a pro se situation, and Mr. Cox did not technically, he was not technically proficient, I'll just say that in that regard, with preserving these issues. However, the substance of his arguments, I would contend, were made clear to the prosecution, to the court, but I will submit and I will concede that there was technical compliance was certainly lacking here. So even at the end, if the court does not apply de novo review, I would still ask, because these issues were at least raised in the district court, that they are given some consideration here. The preserved issue is the Miranda issue regarding the interview outside his home on the front porch? Yes, Your Honor. Yes. And as for that, the circumstances here, admittedly Mr. Cox was at his home, but that's diluted by the fact that he was taken, essentially removed, not physically, but asked to step outside, so he was isolated, separated from his family. It was at night, the officers were in plainclothes, and the duration of this interrogation took two hours. So those circumstances certainly would suggest that there's custody here. And more importantly, if you look at what was underlying this discussion, it was an interrogation. The prosecution, to its credit, admitted in the district court that this was an interrogation. It was designed to elicit incriminating statements from Mr. Cox. So this distinguishes, I think, the normal situation where officers or the prosecution readily concede, yes, we were trying to get incriminating information. But wasn't Mr. Cox told on both occasions, on numerous occasions, numerous instances, that he was not being held, he was not being arrested, that he was free to go, and that he was free to terminate the conversation whenever he chose? Yes, Judge Lee. Yes. And that certainly cuts against our position, but again, we would come back with the fact that this duration, this questioning, took two hours, at least two hours. And there were incriminating information provided by Mr. Cox. And the fact that they advised Mr. Cox he would not be arrested, that's an important factor, but it's only one of a number of factors that the court considers. Additionally, the fact that the next day, and I would ask the court to consider that, look at the whole picture. Miranda was not given at the office. It was not given in his home. There was no search warrant for the computer. There was no search warrant to enter the office. So the confluence of these factors should certainly be considered. And so the following day, essentially 12 hours later the next morning, agents visit Mr. Cox at his office. They go directly to his office. They close the door. It's undisputed the nature of this office. We don't have the exact measurements like some of these other cases, but it's undisputed that this office is a shoebox. The door is closed, and it's so small that one agent can't even sit. One agent must stand, and he's blocking the door. So as far as custody for that interrogation, again the proximity and the questions that were raised, the answers that were elicited, this again suggests that Miranda should definitely have been provided. And the agents testified there was no reason they didn't give it. They just decided, well, he's not in custody. We believe he's not in custody, so therefore we're not going to provide these rights. As I recall, I mean, when we look at those issues, we just look at the totality of circumstances and a host of factors and apply the relevant standard. But it seems to me that the other fact in the interview in his office that cuts against Mr. Cox is the fact that when he was asked to call up information on his computer, that he sometimes showed the officer some information but then felt free to not show them others. Why doesn't that cut against Mr. Cox's position as well? I mean, if he's able to decide freely what information to provide and what information not to provide. Certainly, it would. And you know, there are obviously some factors here, that's one of them, that do cut against us. But again, I would respond with the fact that these rights were not read multiple occasions. Warrants were not sought. So again, this was an approach to a case, and that's why I would allude to my preliminary statements. These were very unflattering facts. Lurid photos being essentially exploited from young girls. So I think these agents felt compelled, I will say, to cut constitutional corners here. And the fact that they reason, well, we don't think he's in custody, I think that's a dangerous rationale or a dangerous precedent to say, well, because the agent doesn't think he's in custody, I don't need to read these rights. These were experienced agents. They knew exactly what they were doing. They were trying to glean information. They were doing their job, frankly. But at the same time, their job doesn't entail eviscerating Miranda and eviscerating Mr. Cox's constitutional rights. As for Judge Lee, just to go back to your question about the questioning at the office, you know, the factors that you mentioned, again, certainly cut against him. But if we look at the ultimate test, which is a reasonable person, would a reasonable person feel free to leave the situation, to leave the encounter? And it's hard to say that a reasonable person would have felt they could stand up, excuse themselves, essentially ask these two officers to move because the office is so small, and just saunter out of the office. It's very hard, especially when when the two officers are essentially blocking the door. So I think that that's a fact that is obviously unique to this situation. But unlike some of these other cases, we don't have that exact dynamic that we have here. And so I think that would be the factor, the most compelling factor out of all these things. But we're not here to reweigh the evidence, right? We are to decide whether or not the district court's termination was plain error, right? So we're applying a, we're not applying a de novo standard. We're not a finder's effect. We're not here trying to figure out what exactly happened. What we're trying to decide is whether the district court plainly erred in holding that Mr. Cox was not in custody in his office. Yes, Your Honor. Yes. And I would, I would admit it's not the most favorable standard of review for me. Moving on, if I may, to the other Sixth Amendment concerns regarding Mr. Cox's defense. Mr. Cox was hampered in his abilities to present a defense because of two witnesses who the district court barred. Ms. Wolfe and Mr. Hazelwood. These witnesses would have definitely assisted Mr. Cox in this case because they would have demonstrated that the culprit, or at least a possible culprit, was Mr. David Kilcain. And so these two witnesses had firsthand knowledge of Kilcain's actions, his deeds, in terms of exploiting women for pictures, and they would have bolstered his case and given the case a new dimension that his, frankly, only witness, Ms. Drubert, didn't give, along with testimony from from Agent Stewart. So there were certain, certain elements of the defense that Mr. Cox was able to use via Agent Stewart and Ms. Drubert, but what would have completed his case, or at least made his case much stronger, would have been the testimony of these two barred witnesses. As for the right to compel, the attendance of under the Sixth Amendment, and this right was also essentially suspended here. The district court looked at Mr. Darren Miller's testimony. He wasn't a process server, he was essentially a computer expert, and he was appointed by the court for issues concerning computers. Obviously this is a very technical case, but he was, for some reason, he was assigned the duty, I'm not sure if it was for Mr. Cox or just on his own, but he was assigned the duty of serving this. He, I don't, the record's not clear, but I would, I would venture to argue he didn't have any experience with with such actions. Obviously he demonstrated that at least by not filling out the proper forms, the mileage fees, etc. So I think that under these circumstances, Mr. Cox, again, is in jail. He's indigent. He uses, again, whether through his wisdom or Mr. Miller's wisdom, Mr. Miller uses his efforts to try and, to try and serve Mr. Kulkin. And so under these circumstances, the district court should have, should have found that Cox utilized these resources and made a concerted effort to serve David Kilkline. If there are no further questions, I'll reserve the balance of my time. That's fine, thank you. Thank you, Your Honors. Mr. Whelan. Good morning, Your Honors. May it please the court. Nathaniel Whelan here on behalf of the government. This court should affirm Mr. Cox's convictions. Mr. Cox argues on appeal, essentially, that he should be excused from compliance with Rule 12, the Magistrate Act, and Rule 17, amongst other things, because he was pro se. That isn't what the law or rules require. Rule 12 requires that he files a motion to suppress pretrial. He did not do that. He did not offer good cause explanation at the district court. He did not offer it in his opening brief, and any argument in his reply brief is waived as good cause. Alternatively, even if this court looks at his argument, his argument is essentially he was pro se, and so pro se people shouldn't have to comply with Rule 12. This court has never held that, and that would be an untenable rule. It essentially put pro se litigants in a position where they could raise a suppression issue at any stage in the proceedings. In this case is a pretty good example. He raises the suppression issue as it relates to his computer mid-trial and date 3, I believe. Were the court required to deal with that issue, it would have had to stop the trial, have an evidentiary hearing, take testimony, would have excused the jury, would have had to issue an opinion in order, and then we would have come back and restarted the trial over again if the court ruled in favor of the government. If the court ruled in favor of the defendant, we probably have a mistrial motion, we wouldn't know what evidence is inadmissible, what evidence is admissible. Rule 12 exists for a reason, and its requirements exist for a reason. Mr. Cox didn't comply with them, and this court has never held that pro se status alone is good cause to excuse compliance. Judge Lee, you're right. The issue about the interview outside of Mr. Cox, or I'm sorry, inside Mr. Cox's office was not appealed to the district court. 28 U.S.C. 636, the Magistrate Act, requires that it be appealed to the district court. This court held in Gibson, which we said in our brief, if you don't comply with that, the issue is waived. So that issue is waived as well. Now the only factual argument Mr. Cox makes as to why this court should excuse good cause is because he didn't believe he understood Michael Burns was the one who consented pretrial to the search of his computer. If the motion to suppress. The parties are talking about the owner of Burns Construction, and Defense Counsel, who is at that point still representing Mr. Cox, references a report by the FBI, again this is page 41 of the transcript, and says the owner of Burns Construction, Michael Burns, and then references a report of an interview the FBI did with him on that day, August 22nd, the day he So that's not good cause. So the issue relating to the computer is absolutely waived and not before this court. Even if this court does look at it though, Mr. Cox has not shown that he had a reasonable expectation of privacy in his computer. More importantly, this case is about consent, which Mancusi, Shelton, Ortega were not. Mr. Burns, so the agents walk into Burns Construction, say, and walk in, the office manager says, here, come talk with the company's owner, a person named Michael Burns, same last name as the company, and he gives consent to search the computer. That's consent, or arguably, at worst for the government, apparent authority to consent. It's not plainly erroneous to believe that he had the authority to consent. So unless the court has any questions on the computer or office search, I'll move on to the Miranda questions. As it relates to the interview outside of Mr. Cox's house, Mr. Cox was out there for somewhere between an hour and a half and three and a half hours. The record's not exactly clear. And both the magistrate and district court found that that probably weighed against custody, I'm sorry, weighed in favor of custody. But there were numerous other facts, and Judge Lee pointed to a couple. The magistrate found that they told him, you're free to leave anytime. There's no situation where you're under arrest. This was a plainclothes situation. No guns were drawn. There was no use of force. This case is not a situation where a defendant is in custody. And to the extent that the defendant is arguing that agents shouldn't be able to make that determination, agents have to make that call all the time as to whether someone's in custody. That's why the Miranda question is a two-part question. It's whether there's interrogation and whether someone's in custody. If you look at the Patterson case that we cite they made the call that he wasn't in custody. That's why they didn't read him as Miranda writes. This is something agents have to do. It's not eviscerating a defendant's constitutional right. It's the agents conducting interviews pursuant to the Fourth Amendment and Fifth Amendment. But that they spoke to him for a while, right? I mean, it was a couple of hours? Absolutely, Your Honor. Yeah, and they told him that he was free to leave. They told him that he wasn't going to be arrested. The magistrate found that he voluntarily spoke with them. He consented to speak with them. This wasn't a situation where they dragged him outside and they told him he had to speak. I think this court has found certainly the length of the interview might cut against custody, though. As we noted in our brief, this court and the Supreme Court have found longer interviews are non-custodial. Time is one factor, and there are a lot of factors to consider here. The magistrate and the district court did not err in weighing these factors. To the extent that this court considers the interview inside of his office, Mr. Cox argues it's undisputed it's a shoebox. I actually very much dispute that it's a shoebox. It was a small office. Certainly everyone found that. But on page 28 of Mr. Cox's appendix, the magistrate found that there was no evidence that anyone had to brush against the agents to leave the room. The evidence does not show that they were blocking the door. He would have to tell them to move to get out. To the contrary, the magistrate found the exact opposite, that he could get out without even brushing by the agents. And it wasn't clearly erroneous to find that. And that's the standard of review here. Unless this court has any questions on Miranda, I would just move quickly to the Rule 17 issue. Rule 17 doesn't say, well, first let me, the defense is arguing that under Holmes, he was deprived of complete defense. And so his position that they would have, Wolf and Hazelwood would have assisted his case, it would have helped fill some evidentiary gaps, that's not the standard. Holmes is a case where it's a complete deprivation of defense. That is not what happened here. Ms. Waller was able to testify to support the argument that David Cale Klein committed the crime. The FBI agent, Stewart, testified and gave facts, and Mr. Cox could make the argument. The district court did allow him to call Kristen Drubert to testify about an incident where she was extorted by the Quinton Sager Facebook account. What the district court didn't do is it didn't allow him to call Ms. Wolf and Mr. Hazelwood. And the reason the district court didn't do that is because those crimes were very different than the crime at issue. And while I understand where defense is arguing that this wasn't a hands-on offense, that doesn't really begin to capture what was going on here. We have multiple high school girls in school getting texts from someone they do not know saying, I have naked pictures of you. In certain instances, he even sent the pictures to them. And he said, give me more or I'm going to expose you. He extorted them, and he used some of their most private and intimate images to do that. Your Honors, this is a heinous crime, and he did it all under the cover of anonymity. He did it using the Quinton Sager Facebook account, which obviously was not his name. He did it using a Ralph Lange Facebook account, which was not his name. He did it using a cell phone so that they couldn't know who it was. And the reason why Wolf and Hazelwood weren't relevant to this case is their crimes were completely different that they were going to testify about. They were going to testify that an individual named David Kilkline identified himself. He knew the victims that he was extorting, and he said, give me naked pictures of yourself. The district court found that wasn't 404B evidence because they were just too dissimilar. This wasn't MO. It would be like a bank robber walking in with his mask off, introducing himself to the teller that he knew and said, hey, I'm going to rob you now, as opposed to a bank robber who's wearing a mask, going to a bank where he doesn't know anyone and robs them. That is not 404B MO evidence, and the court properly excluded it. As to the subpoenas to David Kilkline, Mr. Cox certainly could have availed himself of the court to issue the subpoenas. He tried to do that free trial, as it relates to Ms. Wolf and Ms. Drubert. He filed the motion three days before trial. He knew David Kilkline was going to figure prominently in his defense, but he doesn't ask for the court's help until the third day of trial they issue the subpoenas. And Rule 17 allows the district court to consider the timing of the request. That was way too late. Mr. Cox also did not identify what Mr. Kilkline was going to say, which is a requirement under Rule 17 in this court's case law. He didn't explain why he was unable to effectuate service due to financial constraints. He just didn't comply with Rule 17, and the district court properly said, you have to comply with Rule 17. And then the court refused to compel Mr. Kilkline's attendance pursuant to these improperly served subpoenas. Yes, it might seem technical to some extent to say you have to give a witness witness fees, but it's not technical to the witness who we're asking to take a day off from their life or more to come testify in court. You know, Congress has decided these witnesses are entitled to fees, and Rule 17 requires them to serve it. And this court in Davenport said that if a witness is not given the witness fees, the court doesn't have to compel them. That makes sense, right? We aren't going to hold people in contempt for failing to comply with an improperly served subpoena. Your Honors, I'm happy to talk about the sufficiency of the evidence. I think there's just overwhelming evidence as to all the counts. If this court has any questions, I'm happy to run through it. Otherwise, we would just ask that you affirm Mr. Cox's convictions. Thank you. Thank you. Mr. Kelleher. Thank you, Judge Sykes. Just a few brief points. As far as the pro se efforts, you know, we're not asking that all the rules be thrown out because Mr. Cox was pro se. We do ask that he be given some leniency, and there's obviously significant precedent for that. I'd point the court to United States v. Hart, which we cite at page 2 of our reply brief. That's a recent decision. The court routinely excuses noncompliance with certain technicalities when a criminal defendant is pro se. As for the service efforts, I would also point out that Mr. Miller did attempt on three occasions to serve Mr. Kilfine. So this was not an instance where they just forgot about it or didn't follow through. There were multiple efforts made, and that factor should have weighed heavily in favor of compulsory arrest. Well, Mr. Kelleher, doesn't that cut against the argument that he's financially indigent, that he was able to stand by counsel, somehow able to send out those subpoenas? Well, Your Honor, Judge Fahm, the record's not entirely clear on that point. But he was indigent enough to obviously be appointed counsel in the district court as well as up here, but he was also appointed through the CJA this computer expert. So as to his exact financial worth, obviously it was enough that he was able to get these issues or this help, this assistance. But, again, I don't know to the extent was Mr. Miller doing this out of the court's funds, out of his own good heart, or because he was being paid on the side. That I don't know, Your Honor. It was not clear. I will wrap up by just saying, again, I'd ask the court to consider the confluence of the issues. I recognize each issue is considered individually under different standards of review, et cetera. But when we look at the entire picture, no warrants, no Miranda rights, witnesses excluded, no compulsory process, there's just too much when you add everything together. So I would ask the court to consider that portrayal of this case and ask to reverse. Thank you for your time, Your Honors. Thank you very much. Thank you. Thanks to both counsel. The case is taken under advisement.